TRUE, ADMINISTRATOR, *v.* SHEPARD.

51   501
68   265

If one party is an administrator, it will not ordinarily be a proper exercise
of discretion to allow the survivor to testify when it appears that the
deceased, if living, might have testified on the point to which the sur-
vivor is offered.

The fact that all the actors in the transaction, about which the survivor is
offered, are dead but himself, affords no reason for allowing him to
testify, but, on the contrary, increases the danger of injustice by allow-
ing him to testify when the lips of the other party are sealed by death.

Proof that an agent of the payee told the defendant that if he would
sign the note in suit he should not be called on to pay anything on it
but the interest, is inadmissible.

ASSUMPSIT, by Abner C. True, administrator of the estate of Martha
B. Fowle, against George W. Shepard.   Writ dated March 20, 1869.
The plaintiff claimed to recover on the defendant's note for $200, dated
January 2, 1848, payable to Martha B. Fowle, or order, on demand,
with interest annually.   Plea, the general issue.   Tried by the court.

The plaintiff introduced evidence tending to show that Martha B.
Fowle died January 2, 1863, at the house of her daughter, Mrs. True ;
that after her death, Mrs. Shepard, who is the daughter of Martha
B. Fowle and the wife of the defendant, requested, when at Mrs. True's
house, to be allowed to take the note home to show to her husband ;
that she was allowed to do so ; and that the note was never returned.
The defendant produced the note upon notice at the trial.   The signa-
ture was admitted.   The plaintiff did not testify.   The defendant
offered himself as a witness, and proposed to testify that many years
ago he gave a note to Robert Fowle, the husband of Martha B. Fowle,
for land purchased; that immediately after signing said note, and sub-
sequently, Robert Fowle told the defendant that interest during said
Robert's life was all that was to be paid on the note, and that the prin-
cipal was not to be paid ; that Robert died about 1846 ; that thereafter,
Robert's widow and all his children (except the defendant's wife) gave
up said note to the defendant ; that about one or two years later Mary
Fowle, a daughter of said Robert, told the defendant that she thought
that, according to the spirit of his agreement with her father, he should
pay interest to her mother during her life, and requested him to sign
the note in suit ; that the defendant objected to signing this note, but
finally did so upon Mary Fowle's promise that he never should be
called on for anything but the interest accruing in the lifetime of Mar-
tha B. Fowle ; and that he paid interest during her life.

Subject to exception, the defendant was excluded.

The defendant offered to show that after Mrs. Fowle's death, Mrs.
true, her only surviving child except Mrs. Shepard, surrendered the

note to Mrs. Shepard. The evidence was excluded, subject to exception.

Daniel C. Wheeler testified that he thought no persons were present except Mary Fowle, the defendant, and himself, at the time the note in suit was signed. The defendant offered to show by this witness that Mary Fowle, at that time, claimed nothing of the defendant but interest, and agreed that there should be nothing paid on the note but interest. Subject to exception, the evidence was excluded.

It was admitted that, at the time of the trial, Mrs. Shepard was the only surviving child of Robert and Martha B. Fowle.

Verdict for the plaintiff. The case was reserved.

*Wilson* and *Pike & Blodgett,* for the plaintiff.

*Burrows,* for the defendant.

BELLOWS, C. J. The question of the admission of the defendant as a witness, the plaintiff being an administrator and not electing to testify, is settled by the cases of *Moore* v. *Taylor,* 44 N. H. 374; *Chandler* v. *Davis,* 47 N. H. 462; *Brown* v. *Brown,* 48 N. H. 90; *Marston* v. *Le Favour,* Rock. Co. 1870. The doctrine of those cases clearly is, that where the deceased, if living, could have been a witness in respect to the matter in controversy, it would be unequal and unjust to allow the survivor to testify, because, the lips of the other party being sealed, he could not contradict or explain the testimony of the living party. To allow the survivor to testify under such circumstances would often lead to great injustice, and would be clearly opposed to the policy of our legislation.

It should be borne in mind that it is but a few years since any party was allowed to testify in his own cause, and that the legislature have been careful at all times to avoid the injustice of giving to one party the right to testify when the lips of the other were sealed by death. At first, the exclusion of the living party was absolute unless the other party, the executor or administrator, consented that he should testify, or he elected to testify himself; and this so remained until after the decision in *Moore* v. *Taylor,* which was made at the December term, 1862, but not published until 1864.

That decision was, that, upon appeals from commissioners of insolvent estates, it is within the discretion of the court to allow the creditor to testify in his own favor, as well as to compel him to testify for the estate, whether the executor or administrator elect to testify or not. But the court holds that it would not be a sound exercise of discretion to allow the creditor to testify when the other party being dead could not be heard,—unless in exceptional cases, as where the contract, which is the subject of the creditor's claim, was negotiated between him and an agent of the deceased, and who is still living; and the court suggests that it might be useful for the legislature to give the courts a similar discretion under the general law.

The law of June 20, 1865, gave this discretion " only to be exercised when it is clearly made to appear from the evidence that actual injustice or fraud will otherwise be done." This was soon after the report of the decision in *Moore* v. *Taylor* was published, which was quite likely to have caused the passage of the law; as is supposed by the court in *Chandler* v. *Davis*, 47 N. H. 465. At all events, the law must have been passed in view of the construction adopted in that case, which has since been followed in *Chandler* v. *Davis; Harvey* v. *Hilliard*, 47 N. H. 462; *Brown* v. *Brown*, before cited; *Marston* v. *Le Favour*, June, 1870, Rockingham county. Had the legislature contemplated a different rule to guide the discretion of the court, we should naturally have expected other terms than those that were used.

In regard to the general exercise of discretion in these cases, we consider the rule to be established that when it can be seen that the deceased, if alive, might have testified on the point to which the survivor is offered, then, ordinarily, the survivor should not be allowed to testify. We say ordinarily, because the court is not prepared to say that there may not be exceptions to this rule. We *are* prepared to say, however, that this case discloses no ground for any such exception. It is in truth but an ordinary case of a defence disclosed in the offer made by the defendant, and if allowed to testify here it would not be easy to imagine a case where he would not be admissible.

The defendant's counsel puts the claim of the defendant to testify upon the ground that it clearly appears that otherwise injustice would be done; and the reason suggested by him is, that all the actors in the transaction are dead but himself.

We do not think, however, that this would be a good reason for admitting him; on the contrary, it would only diminish the means of explaining or contradicting his testimony, and thereby increasing the danger of wrong and injustice which it is the policy of the law to prevent by excluding the survivor. To show that an executor or administrator could have no means whatever of answering or explaining such testimony as the living party might give, would certainly be a singular reason for exercising the discretion of the court in favor of allowing him to testify.

The question raised in *Harvey* v. *Hilliard* does not arise here, for the case does not find that the affidavit of the defendant was offered as in that case. But if it did, we are satisfied that the decision in that case was right, and should not be inclined to disturb it.

In fact, the decisions in the other cases as to the rules that should guide the discretion of the court must govern this case, as this has nothing to distinguish it from ordinary cases, even if the defendant had offered an affidavit stating what his testimony would be.

If such affidavits are held to be admissible to affect the discretion of the court, they would be offered in all cases, and would be likely to operate as a repeal of the statute on this subject, and could not, we think, have been contemplated by the legislature. The policy of the law is, clearly, that the living party shall not be a witness when the

parties are not on equal terms ; and it must be equally against that policy to allow him to make himself a witness by his own testimony when the lips of the other party are sealed by death. To allow it to be done is an evasion of the law. He is not allowed to give his testimony to the jury in the first instance, but he is allowed to lay before the court, without fear of contradiction, his version of the case, in order to show that injustice would be done if his testimony was not admitted. Such a cause, we think, is against the policy of the statute.

The note introduced was payable to Mrs. Martha B. Fowle, and testimony that her daughter, after her death, surrendered the note to the defendant's wife was correctly rejected, inasmuch as Mrs. True had no authority over it.

The testimony of Mr. Wheeler that Mary Fowle, when the defendant signed the note, claimed only the interest, and agreed that nothing should be paid on it but interest, was rightly excluded, for it was merely an attempt to vary the written contract by parol testimony.

*Judgment on the verdict.*